Case No.  16-11804

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

CHRISTY L.  WILLIAMS,
Plaintiff – Appellant
v.
TARRANT COUNTY COLLEGE DISTRICT, agent of Tarrant County College,
Defendant – Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION
THE HONORABLE REED O'CONNOR PRESIDING

---

BRIEF FOR APPELLEE TARRANT COUNTY COLLEGE DISTRICT

---

Lu Pham
State Bar No.  15895430
LPham@dphllp.com
Lauren H.  McDonald
State Bar No.  24085357
LMcDonald@dphllp.com
Dowell Pham Harrison, LLP
505 Pecan Street, Suite 101
Fort Worth, Texas 76102
Phone: (817) 632-6300

Angela H.  Robinson
State Bar No.  24006655
Angela.Robinson@tccd.edu

Attorneys for Appellee,
Tarrant County College District

Case No.  16-11804

CHRISTY L.  WILLIAMS,

                        Plaintiff – Appellant

v.


TARRANT COUNTY COLLEGE DISTRICT, agent of Tarrant County College,

                        Defendant – Appellee

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Christy L.  Williams, Plaintiff—Appellant

Donald E.  Uloth, Donald E.  Uloth, P.C.—Attorney for Plaintiff – Appellant

Tarrant County College District—Defendant – Appellee

Lu Pham and Lauren H.  McDonald, Dowell Pham Harrison, LLP, attorneys for Defendant – Appellee

Angela Robinson, Tarrant County College District, attorney for Defendant – Appellee

/s/ Lu Pham
Lu Pham
Attorney for Defendant – Appellee
State Bar No.  15895430

## **STATEMENT REGARDING ORAL ARGUMENT**

This appeal is by an individual who is challenging the district court's grant of summary judgment against her in an Americans with Disabilities Act and Family Medical Leave Act case. The district court's opinion and basis for its opinion is clear: it is based primarily on lack of evidence to overcome summary judgment. Therefore, oral argument is not necessary. If the Court determines, however, that oral argument would be helpful, Defendant-Appellee requests the opportunity to participate in oral argument.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ II

STATEMENT REGARDING ORAL ARGUMENT ............................................. III

TABLE OF CONTENTS ...................................................................................... IV

TABLE OF AUTHORITIES ............................................................................... VII

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 1

STATEMENT OF THE CASE ................................................................................. 2

RELEVANT PROCEDURAL HISTORY ............................................................. 10

SUMMARY OF THE ARGUMENT ..................................................................... 11

ARGUMENT ......................................................................................................... 11

I.      The district court properly granted summary judgment on Williams' ADA and
        TCHRA claims ............................................................................................ 12

        A. Summary judgment was proper on Williams discriminatory termination
           claim because Williams did not present admissible evidence    of    a
           disability .............................................................................................. 12

        1. Williams did not present admissible evidence that she was disabled
           ...................................................................................................... 13

        (a) Williams did not present admissible evidence that her
            impairments substantially limited a major life activity ............ 14

        (i)     Williams' medical documentation was not admissible for
                summary judgment purposes ................................................. 16

        (ii)    Supporting documentation is required to prove that an
                impairment substantially limits a major life activity ........... 19

(iii)    Williams' evidence of "substantially limits" does not raise
fact questions sufficient to overcome summary judgment ..22

(iv)    Even with reasonable inferences drawn in favor of Williams,
her claim cannot survive summary judgment as a matter of
law ........................................................................................26

(b) Summary judgment was properly granted on Williams'
"regarded as" disability claim ...................................................26

(i)    TCCD properly moved for summary judgment on Williams'
"regarded as" claim.............................................................27

(ii)    Williams did not present summary judgment evidence that
TCCD "regarded her" as being disabled .............................29

2.  Williams is not qualified for the position and/or did not provide
admissible evidence to overcome summary judgment ..................32

3.  There is no evidence that TCCD terminated Williams due to her
alleged disability ..........................................................................34

4.  TCCD articulated a legitimate, non-discriminatory reason for
terminating Williams' employment ..............................................36

5.  There is no evidence of pretext ......................................................39

(a) Temporal proximity alone is insufficient to raise a triable issue
...................................................................................................39

(b) TCCD's reasons do not lack credence .....................................40

(c) There are no evidentiary inconsistencies concerning Williams'
termination ...............................................................................41

(d) There is no evidence that TCCD exhibited discriminatory animus ................................................................................42

B. Summary judgment was proper on Williams' failure to accommodate claim ...................................................................43

    1. TCCD properly moved for summary judgment on Williams' failure to accommodate claim....................................................43

    2. Williams did not present summary judgment evidence that she had an actual disability under the ADA................................................44

C. Summary judgment was proper on Williams' retaliation claim because TCCD properly moved for summary judgment and Williams failed to exhaust her administrative remedies ...................................................44

    1. TCCD properly moved for summary judgment on Williams' retaliation claim............................................................44

    2. Williams failed to exhaust her administrative remedies on her retaliation claim............................................................46

II.    Summary judgment was properly granted on Williams' FMLA claims ................................................................................49

A. TCCD moved for summary judgment on Williams' failure to restore and retaliation claims under the FMLA .............................................50

B. Williams failed to present summary judgment evidence on a claim of willfulness ...................................................................51

CONCLUSION ..................................................................53
CERTIFICATE OF SERVICE ...............................................54
CERTIFICATE OF COMPLIANCE......................................55

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Apache Corp. v. W&T Offshore, Inc..*,
626 F.3d 789 (5th Cir. 2010) ....................................................................28, 45, 52

*Ariza v. Loomis Armored US, L.L.C.*,
2017 WL 218011 (5th Cir. Jan. 18, 2017) ...........................................................30

*Arlington Apt. Investors, LLC v. Allied World Assur. Co. (U.S.), Inc.*,
612 Fed. Appx. 237 (5th Cir. 2015) .....................................................................22

*ATI Enterprises, Inc. v. Din*,
413 S.W.3d 247 (Tex. App.—Dallas 2013, no pet.) ............................................47

*Bellofatto v. Red Robin Intern., Inc.*,
No. 7:14-cv-00167, 2014 WL 7365788 (W.D. Vir. Dec. 24, 2014) ............20, 23

*Brown v. AT&T Services, Inc.*,
CV H-16-169, 2017WL 896159 (S.D. Tex. Feb. 15, 2017) ..................... 15, 17-8

*Burton v. Freescale Semiconductor, Inc..*,
798 F.3d 222 (5th Cir. 2015)......................................................................30, 32, 39

*Cannon v. Jacobs Field Services North America, Inc.*,
813 F.3d 586 (5th Cir. 2016) ........................................................................... 31-2

*Cocroft v. HSBC Bank USA, N.A.*,
796 F.3d 680 (7th Cir. 2015) .................................................................................25

*Delaval v. PTechDrilling Tubulars, L.L.C.,*
824 F.3d 476 (5th Cir. 2016) .........................................................................13, 37

*Eason v. Thaler*,
73 F.3d 1322 (5th Cir. 1996) ................................................................................15

*E.E.O.C. v. LHC Group, Inc.*,
773 F.3d 688 (5th Cir. 2014) .........................................................................13, 39

*Estate of Murray v.  UHS of Fairmount, Inc..*,
No.  10-2561, 2011 WL 5449364 (E.D.  Penn.  Nov.  10, 2011) ...........................25

*Fairchild v.  All American Check Cashing, Inc.*,
815 F.3d 959 (5th Cir.  2016).................................................................39

*Forsyth v.  Barr*,
19 F.3d 1527 (5th Cir.  1994) ................................................................15

*General Elec.  Co.  v.  Jackson*,
595 F.  Supp.  2d 8 (D.D.C.  2009) .........................................................20

*Gray v.  Kroger Corp.*,
804 F.  Supp.  2d 623 (S.D.  Ohio 2011) .................................................42

*Highland Capital Mgmt.  L.P.  v.  Bank of Am., Nat.  Ass'n*,
3:10-cv-1632-L, 2013 WL 4502789 (N.D.  Tex.  Aug.  23, 2013) .......................17

*Highland Capital Mgmt., L.P.  v.  Bank of Am.  N.A.*,
574 Fed.  Appx.  486 (5th Cir.  2014) ....................................................17

*In re Louisiana Crawfish Producers*
852 F.3d 456 (5th Cir.  2017) ......................................................... 14-5

*Johnson v.  City of Shelby, Miss.*,
642 Fed.  Appx.  380 (5th Cir.  2016) ...................................................15

*Johnson v.  JPMorgan Chase & Co.*,
Civ.  No.  16-1632, 2017 WL 1237979 (W.D.  LA Feb.  16, 2017) .......................14

*Krim v.  BancTexas Group, Inc.*,
989 F.2d 1435 (5th Cir.  1993) ............................................................15

*Lahey v.  Illinois Bell Telephone Co.*,
13 C 8252, 2014 WL 1884446 (N.D.  Ill.  May 9, 2014) ................................... 48-9

*Lindsey v.  Sears Roebuck & Co.*,

16 F.3d 616 (5th Cir. 1994)................................................................. 14-5

*Miller v. Southwestern Bell Telephone Co.*,
51 Fed. Appx. 928 (5th Cir. 2002)................................................... 47-8

*Mozingo v. Oil States Energy, Inc.*,
661 Fed. Appx. 828 (5th Cir. 2016)......................................................52

*Murchison v. Cleco Corp.*,
544 Fed. Appx. 556 (5th Cir. 2013)......................................................22

*Naber v. Dover Healthcare Assocs.*,
765 F. Supp. 2d 622 (D. Del. 2011) ............................................. 24-5

*Palacios v. Continental Airlines, Inc.*,
No.H-11-3085, 2013 WL 499866 (S.D. Tex. Feb. 11, 2013 ..............24

*Pallatto v. Westmorland County Children's Bureau.*,
No. 2:11cv1206, 2014 WL 836123 (W.D. Penn. March 4, 2014) ...............21, 23

*Porter v. New York Univ. School of Law*,
392 F.3d 530 (2nd Cir. 2004)..................................................................53

*Price v. Harrah's Md. Heights Operating Co.*,
117 F. Supp. 2d 919 (E.D. Mo. 2000) ..............................................47

*Smith v. Dallas County Hosp. Dist.*,
651 Fed. Appx. 279 (5th Cir. 2016) ....................................................15

*White v. Baptist Memorial Health Care Corp.*,
699 F.3d 869 (6th Cir. 2012) ................................................................25

*Williams v. AT&T Mobility Services, LLC*,
186 F. Supp. 3d 816 (W.D. Tenn. 2016) .....................................21, 23

**<u>Statutes</u>**

42 U.S.C. § 12102(1) ........................................................................14, 44

42 U.S.C. § 12102(3)(A) ........................................................................29

42 U.S.C. § 12111(8) ...............................................................................33

42 U.S.C. § 12201(h) ...............................................................................44

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Williams failed to present admissible summary judgment evidence that she suffered from an impairment that substantially limited a major life activity and, therefore, summary judgment was appropriate.

2.    TCCD properly moved for summary judgment on Williams' "regarded as" disability claim, her failure to accommodate and retaliation claims under the ADA, and her retaliation and failure to restore claims under the FMLA.  There being no summary judgment evidence presented to overcome summary judgment, the district court properly granted summary judgment.

3.    Williams failed to present admissible evidence that TCCD regarded her as disabled.

4.    Williams is not able to perform the essential functions of her job and/or failed to provide admissible evidence to overcome summary judgment.

5.    Williams did not present admissible evidence that TCCD terminated her because of her alleged disability.

6.    Williams cannot present evidence to show that TCCD's legitimate, non-discriminatory reason was pretext for discrimination.

7.    Williams did not exhaust her administrative remedies on her retaliation claim.

8.    Williams did not present evidence of willfulness and, therefore, her FMLA claims were subject to the two-year limitations period.

## STATEMENT OF THE CASE

Plaintiff-Appellant Christy Williams ("**Williams**" or "**Plaintiff-Appellant**") began her employment with Defendant-Appellee Tarrant County College District ("**TCCD**" or "**Defendant-Appellee**") in February 2009 as a full-time Instructional Associate in the Writing Lab at TCCD's Northwest Campus in Fort Worth, Texas. ROA.113; 135-136; and 900. The essential functions of the Instructional Associate position include the following: providing feedback for students on writing assignments on a walk-in and scheduled basis; conducting tutoring sessions with students; supervising students working on computers; and working effectively with other writing lab staff, students and faculty members. ROA.135-138. Williams admits that an essential requirement of her job was to be able to assist multiple students at the same time and to do so in a polite/professional manner. *See* ROA.159.

During the fall of 2011, Williams had confrontations with other staff members at TCCD and received several student complaints. ROA.113 and 137-150. On October 20, 2011, Williams had a confrontation with a student worker in the writing lab. ROA.139 and 142. The student worker reported that Williams told him that "[she] ha[d] a problem with [him] butting in [her] conversations and being a smart-

ass." ROA.139 and 142.[1]  Because of this confrontation, the student worker did not feel comfortable returning to work in the writing lab and had to be relocated to a different position.  ROA.139.

Another confrontation occurred on September 30, 2011 when it was reported to TCCD that Williams scolded a student in the writing lab in the presence of two other writing lab employees; this incident was witnessed by Plaintiff's supervisor, Conrad Herrera.  ROA.140.  According to the report, Williams confronted the student for not returning a tutoring form and spoke in an angry, loud tone to the student.  ROA.140.  Because of these confrontations and other student complaints, Williams' supervisor required her to complete two professional development assignments focused on customer service and conflict management.  ROA.140 and 142.

These confrontations and student complaints continued throughout the 2012 calendar year.  ROA.137-150**.**  In the spring of 2012, Williams had a confrontation with her supervisor.  ROA.139-141 and 143.  According to Mr.  Herrera, Williams told him that he was incompetent, a bad manager because of his limited experience and knowledge base, and that she did not want to work for him anymore.  ROA.139.  As a result of their disagreement, Williams and her supervisor could no longer meet

---

[1] The Performance Improvement Plan ("PIP") was written, but TCCD decided not to issue the PIP because TCCD wanted to work with Williams without having to escalate discipline.

without a third party witness present.  ROA.143.   Specifically, Williams and her supervisor met only when the Department Dean (Dr.  Christine Hubbard) and/or Department Chair (Anita Biber) were also present.  ROA.143 and 160.

On April 27, 2012, Lily Calzada, Coordinator of Special Services at TCCD, reported that she observed Plaintiff-Appellant having an altercation on campus with a young woman, presumably a student.  ROA.148-149.   Ms.  Calzada advised that Williams' voice was loud enough that she could hear the argument approximately 10 cars away.  ROA.148-149.   Ms.  Calzada reported that she did hear Williams say, "I'm sick of you students…."  ROA.148-149.   Ms.  Calzada advised that she was concerned about Williams' aggressive and hostile attitude.  ROA.148-149.   In response, Dr.  Christine Hubbard (Department Dean) advised Ms.  Calzada that she would speak with Williams about the incident and work with Williams "to determine better ways to respond positively to students."  ROA.148-149.   On September 12, 2012, a student called Mr.  Herrera and complained that Williams was unprofessional, mean and would not help her edit her paper.  ROA.150.

Because of the deteriorated working relationship between Williams and her supervisor, it was decided that Williams, Mr.  Herrera, Anita Biber (Department Chair), and Dr.  Christine Hubbard (Department Dean) would have meetings to discuss Williams' work performance.  ROA.143-147.   On October 31, 2012,

Williams met with Dr. Hubbard, Ms. Biber, and Mr. Herrera to address Williams' concerns regarding her supervisor and to identify areas in which the writing lab could improve. ROA.143. A follow up meeting was scheduled on November 6, 2012 to allow Mr. Herrera to respond to Williams' criticisms. ROA.143. The October 31st and November 6th meetings occurred without any incident. *See* ROA.143.

On November 13, 2012, Mr. Herrera and Ms. Biber met with Williams to discuss her Annual Administrative Performance Evaluation. ROA.143. During this meeting, Ms. Biber informed Williams that another instructor, Helen Yakub, expressed concerns that Williams was "very put-out" and rude to her when Ms. Yakub took students to the writing center. ROA.144. Williams became agitated, began to cry uncontrollably and stated she wished she had her mother's cancer. ROA.144-147 and 164-165. Williams became so disruptive that a campus police officer was called to try to calm her down. ROA.146. Also, a nurse and counselor were called to the scene. ROA.146. Williams remained in the writing lab for several hours with the campus police officer and counselor, effectively shutting down the lab for the evening. ROA.137-138 and 146. Williams left TCCD campus later that evening and was placed on paid administrative leave. ROA.138 and 146. The meeting to discuss Williams' performance and evaluation was not completed, and

Williams was off work from November 14, 2012 to January 2, 2013. ROA.116, 138, 151-152, and 155.

On January 2, 2013, Williams met with Dr. Ricardo Coronado the Associate Vice Chancellor of Human Resources and Sharion Marshall the EEO Employee Relations Representative to discuss her performance. [2] ROA.151. According to Williams, Dr. Coronado read from a list of issues that Department Chair Anita Biber and/or Department Dean Christine Hubbard had addressed in their Memorandum. ROA.137-138, 143-147, 151-152 and 179. Most notably, Williams' performance issues raised in these memoranda, included the following:

- She becomes extremely agitated when trying to multitask. For example, if she is tutoring a student, she becomes frustrated, angry, and stressed when interrupted by students working on computers in the lab.

- She is unwilling to assist walk-in students with questions and instead requires them to leave their essays and schedule a follow-up appointment to receive assistance.

- She has ongoing conflicts with her co-workers in the lab and is insubordinate with her supervisors, Learning Lab Manager Conrad Herrera.

- She has ongoing conflicts with the faculty members who send students to the lab and complains about their assignments and teaching methods.

---

[2] During the time period of November 14, 2012 to January 2, 2013, Williams refused to come to TCCD to meet with staff to discuss her performance. ROA.151.

- She is stressed whenever working in the lab alone and pressures other staff to change their schedules or to come in outside their work hours to assist her.

- She has had several loud outbursts in the lab and in the hallway outside the lab area related to her interpersonal conflicts with student assistants, faculty, and staff. These outbursts have been disruptive to the other staff in the lab and to students working in the lab.

- She has had complaints from students, staff, and faculty regarding her behavior.

- On November 13, 2012, in response to feedback from Academic Foundations Department Chair Anita Biber about a complaint from an instructor who had brought students to the lab, **Williams became angry, agitated, and began crying uncontrollably. She then ranted about her unhappiness in the lab and made comments about her inability to manage the stress she feels when working in the Writing Lab. She became so distraught that she asked to go home, and then made comments indicating that she might harm herself. She also requested to be allowed to take drugs in her purse. We contacted our nurse, a counselor, and a police officer to monitor her behavior and decide how to proceed.** Williams remained in the Writing Lab break room for several hours with the officer and counselor wailing and ranting so loudly that it was disruptive to the students in the lab and to the other lab staff. Once Ms. Williams left the campus, she was placed on paid administrative leave pending review of her ability to perform the essential functions of her position.

ROA.137-138 and 179 (emphasis added). Also during this January 2, 2013 meeting,

Williams provided a Certification for Fitness for Duty from her doctor certifying that

she could return to work on January 2, 2013, **without any restrictions**. ROA.153-

154. Williams did not discuss with her doctor any specific accommodation that she

would need to perform her job. ROA.178. On January 7, 2013, Williams was

terminated based on past job performance, which TCCD was addressing before her leave of absence.  ROA.155.

On July 8, 2013, Williams filed her Charge of age and disability discrimination with the Texas Workforce Commission, claiming that she had been terminated due to her age and disability.  ROA.156.  Williams did not assert a claim for retaliation in her Charge.  ROA.156.  TCCD denied the Charge and timely submitted its position statement in opposition to the Charge.  ROA.118.

On March 30, 2015, Williams filed her lawsuit against TCCD, alleging disability discrimination, including a failure to accommodate and retaliation under the ADA and TCHRA.  ROA.10-14.  Williams also alleged that TCCD's decision to terminate her employment was in retaliation for her use of leave under the FMLA.  ROA.10-14.  Williams alleges that her medical conditions impacted her ability to date and socialize and caused her to experience anxiety only when she had to deal with rude and demanding students.  ROA.166-171 and 184-185.  However, Williams presented no solution for TCCD to identify rude and demanding students to prevent them from using the services of the writing lab.  *See* ROA.166-175.

Despite Williams' contention that TCCD failed to offer her a reasonable accommodation, Williams admits that she was able to perform her job **without any accommodation**.  ROA.168-171 (emphasis added).  Specifically, Williams testified

that her medical conditions did not prevent her from doing her job at TCCD. ROA.168-171.   In addition, Williams admits that no doctors have told her that she had a disability from which her employers would have to accommodate her in order to perform her job since January 1, 2013.  ROA.184-185.

Moreover, throughout Williams' tenure, TCCD made many efforts to try to accommodate Williams' complaints.   When Williams complained that she was anxious and stressed due to the increased workload in the writing lab, TCCD hired another Instructional Associate, Crystal Bravo, to assist Williams.  ROA.158.   When Williams complained that she had a light sensitivity issue, TCCD had a light dimmer installed over Williams' desk so that it would dim the lights.  ROA.119.   Finally, when Williams complained that she did not like to work alone in the writing lab at night, TCCD offered to relocate Williams to the library, but Williams refused. ROA.161.

As to her discrimination and retaliation claims, Williams admits that she is not aware of any TCCD policy or practice whereby TCCD would not fulfill an employee's request for accommodation due to a disability.  ROA.180-182.    In addition, Williams is not aware of any instance where she believes that TCCD retaliated against individuals for exercising their rights under the FMLA or ADA. ROA.180-182.

## RELEVANT PROCEDURAL HISTORY

- On July 22, 2016, TCCD moved for summary judgment and asked for Williams' case to be dismissed in its entirety.  ROA.4; 105; and 131**.**

- On August 10, 2016, Williams filed a motion to extend the deadline for her response to TCCD's motion for summary judgment.  ROA.4 and 187-188.  This motion was granted by the Court on August 11, 2016.  ROA.4 and 190.

- On August 19, 2016, Williams filed her response to TCCD's motion for summary judgment.  ROA.4 and 191-232.  Significantly, Williams did **not** assert any objections to the evidence TCCD submitted in support of its motion for summary judgment.  ROA.191-232.[3]

- On September 9, 2016, TCCD filed its objections to Williams' summary judgment evidence.  ROA.5 and 504-519.  TCCD also filed its reply to Williams' response to TCCD's motion for summary judgment on this date.  ROA.5 and 520-533.

- On October 5, 2016, Williams filed a response to TCCD's objections to her summary judgment evidence.  ROA.6 and ROA.777-790.

---

[3] Williams did raise the objections her counsel asserted during her deposition.  However, Williams failed to obtain a ruling from the district court on these objections.  Therefore, the objections are waived.  Williams did not submit any objections to the remainder of TCCD's summary judgment evidence.

- On November 22, 2016, the Court granted TCCD's motion for summary judgment.  ROA.7 and ROA.900-916.

Despite having filed a response to TCCD's objections to her summary judgment evidence, Williams never filed a motion for leave or attempted to file a sur-reply to TCCD's reply to Williams' response to TCCD's motion for summary judgment.

## SUMMARY OF THE ARGUMENT

Summary judgment was appropriate in this case because TCCD moved for summary judgment on Williams' entire case, and Williams failed to present admissible evidence to overcome summary judgment.  In addition, the amicus brief submitted by AARP, AARP Foundation, Disability Rights Texas, and the National Employment Lawyers Association misses the point that the district court granted summary judgment because Williams failed to submit admissible evidence to overcome summary judgment.  Therefore, this Court should affirm the ruling of the district court.

## ARGUMENT

Williams and the Amicus Parties (AARP, AARP Foundation, Disability Rights Texas, and the National Employment Lawyers Association) argue that summary judgment was improperly granted because the district court applied pre-

ADAA law. However, Williams and the Amicus Parties fail to realize that the district court granted summary judgment because Williams failed to submit admissible evidence to overcome summary judgment. Therefore, the fact that the district court cited to pre-ADAA case law is irrelevant. Summary judgment was properly granted due to Williams' inability to submit evidence to overcome summary judgment.

I.    **The district court properly granted summary judgment on Williams' ADA and TCHRA claims.**

Summary judgment was properly granted on Williams' ADA and TCHRA claims because TCCD moved for summary judgment on **<u>all</u>** of Williams' claims and Williams failed to submit competent summary judgment evidence to create a genuine issue of material fact to overcome summary judgment. Williams sued TCCD for disability discrimination in violation of the ADA and TCHRA. ROA.12-13. Specifically, Williams alleged that TCCD unlawfully discriminated against her by terminating her employment because of her disability, because it failed to provide reasonable accommodations, and because it terminated her employment due to her exercise of rights under state and federal disability protection laws. ROA.12-13. TCCD moved for summary judgment on Williams' lawsuit in its entirety. ROA.131.

A.    **Summary Judgment was proper on Williams' discriminatory termination claim because Williams did not present admissible evidence of a disability.**

The district court properly granted TCCD's Motion for Summary Judgment because Williams did not present competent evidence to meet her *prima facie* case of disability discrimination.  In an ADA case, the plaintiff must show: (1) that she has a disability; (2) she was qualified for the job; and (3) she was subject to an adverse employment decision on account of the disability.  *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir.  2016).  "Once an employee has established his *prima facie* case, the burden shifts to the employer to 'articulate a legitimate, nondiscriminatory reason for' the adverse employment action."  *Id.*  Thereafter, the employee **must** offer sufficient evidence to create a genuine issue of material fact either (1) that defendant's reason is not true, but is instead a pretext for discrimination; or (2) that defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic.  **ROA.909**; *E.E.O.C.  v.  LHC Group, Inc.*, 773 F.3d 688, 702 (5th Cir.  2014) (emphasis added).  Because Williams did not present admissible summary judgment evidence that she has a disability, Williams was unable to satisfy her *prima facie* case.  Therefore, summary judgment was proper.

**1.    Williams did not present admissible evidence that she was disabled.**

Summary judgment was proper because Williams did not present admissible evidence to create a fact issue as to whether she was disabled under the ADA or that TCCD "regarded her" as disabled.  The ADA defines a disability as: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment.  42 U.S.C. § 12102(1).  An impairment is considered a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  *Johnson v. JPMorgan Chase & Co.*, No.  16-1632, 2017 WL 1237979, at *5 (W.D.  LA Feb. 16, 2017).  In this case, Williams did not submit admissible evidence to create a genuine issue of material fact as to whether her alleged impairments substantially limited a major life activity.

### (a) Williams did not present admissible evidence that her impairments substantially limited a major life activity.

The district court properly granted summary judgment because Williams did not present admissible evidence from which a jury could reasonably conclude that her alleged impairments substantially limited a major life activity.  "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."  *In re Louisiana Crawfish Producers*, 852 F.3d 456, 462 (5th Cir.  2017) (quoting *Lindsey v. Sears*

*Roebuck & Co.*, 16 F.3d 616, 618 (5ᵗʰ Cir. 1994). "On a motion for summary judgment, a non-moving party **must provide evidence that meets the admissibility standards at trial**." *Brown v. AT&T Services, Inc.*, No. H-16-169, 2017 WL 896159, at *3 (S.D. Tex. Feb. 15, 2017) (emphasis added); *Smith v. Dallas County Hosp. Dist.*, 651 Fed. Appx. 279, 282 (5ᵗʰ Cir. 2016) (noting that the plaintiff failed to present "admissible summary-judgment evidence creating a genuine dispute…."); *Johnson v. City of Shelby, Miss.*, 642 Fed. Appx. 380, 383 (5ᵗʰ Cir. 2016) ("In a motion for summary judgment, the court may **only** consider evidence that is presented to it and admissible.") (emphasis added). "Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5ᵗʰ Cir. 1996). "Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, … if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5ᵗʰ Cir. 1994), *cert. denied*, 513 U.S. 871 (1994) (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5ᵗʰ Cir. 1993).

On appeal, Williams argues that the district court erred in granting summary judgment because (i) her medical documentation was admissible for summary

judgment purposes; (ii) medical documentation and expert testimony are not usually required to prove that an impairment substantially limits a major life activity; (iii) Williams' evidence of "substantially limits" raises fact questions sufficient to defeat summary judgment; and (iv) reasonable inferences must be drawn in favor of Williams. Each of these contentions will be addressed below.

### (i)     Williams' medical documentation was not admissible evidence for summary judgment purposes.

Williams' primary evidence that she suffered from an impairment that substantially limited a major life activity consisted of her own declaration (ROA.235-254), FMLA certification form (ROA.293-296), short term disability claim form (ROA.289-291), and a blood test document (ROA.292). ROA.910. TCCD timely objected that the FMLA leave form and the short term disability form were hearsay and, therefore, were not competent summary judgment evidence. ROA.512-513 and 910. In her response to TCCD's objections, Williams argued that the forms were admissible to show that TCCD was allegedly on notice of her disability, **not as proof of her disability**. ROA.784 and 910 (emphasis added). Because Williams never articulated a hearsay exception that would allow these forms to be considered as proof of her disability, Williams waived her argument that these forms could be used as proof of her disability. Thus, the court properly excluded the evidence.

With that said, if the Court believes that Williams did not waive her arguments that these forms could be considered as evidence of her disability, TCCD will address her arguments. On appeal, Williams argues that evidence that is not in an admissible format may be considered for summary judgment purposes. *Appellant's Brief* at p.10-11. This argument is incorrect. "On a motion for summary judgment, a non-moving party must provide evidence that meets the admissibility standards at trial." *Brown v. AT&T Services, Inc.*, CV H-16-159, 2017 WL 896159, at *3 (S.D. Tex. Feb. 15, 2017). "Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial." *Highland Capital Mgmt. L.P. v. Bank of Am., Nat. Ass'n*, 3:10-cv-1632-L, 2013 WL 4502789, at *5 (N.D. Tex. Aug. 23, 2013), aff'd sub nom., *Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, 574 Fed. Appx. 486 (5th Cir. 2014).

Williams asserts that her FMLA certification form (ROA.293-295) and the disability claim form (ROA.289-291) should have been considered because she somehow could have overcome the hearsay objection at trial through the supposed testimony of Dr. Indurki who was listed as a trial witness. *Appellant's Brief* at p. 10. Williams did not submit any declaration or affidavit of Dr. Indukuri in response to TCCD's summary judgment motion; nor was Dr. Indukuri ever deposed as a

witness.  Further, Williams never articulated in her response to TCCD's objections to her summary judgment evidence that her FMLA certification form and/or her disability claim form would be admissible through the testimony of Dr.  Indukuri. ROA.784.    Therefore, it is pure speculation on Williams' part as to what Dr. Indukuri would or would not testify to at trial.  Moreover, to be considered by the court, summary judgment evidence must be submitted in an admissible format.  *See Brown v.  AT&T Services, Inc*., CV H-16-159, 2017 WL 896159, at *3 (S.D.  Tex. Feb.  15, 2017).  Because Williams failed to submit the FMLA certification form and the disability claim form in an admissible format, and never overcame TCCD's hearsay objections, the district court properly disregarded this evidence.

Further, in her response to TCCD's motion for summary judgment, Williams admitted that she was not submitting the FMLA certification form and the disability claim form as evidence that she suffered from an impairment that substantially limited a major life activity.  ROA.784 and 910.  Instead, she claimed that she was presenting these documents as evidence that TCCD had notice of a disability. ROA.784 and 910.  Because Williams judicially admitted that the forms were **not** evidence of her disability, it was proper for the court to not consider them as such. ROA.784 and 910.

Williams also submitted a blood test document from the Medical Clinic of North Texas (ROA.292) without any testimony from a physician explaining the meaning of the results.  ROA.292 and 910 fn.2.  Instead, Williams opines on the meaning of the blood test results in her declaration without providing any foundation as to how she has the knowledge to interpret blood test results.  ROA.249-250.  TCCD timely objected to the document as hearsay and objected to Williams' testimony since she is not qualified as a medical expert to testify to the meaning of a medical test and the results thereof.  ROA.512-513.   Because the document is hearsay and Williams' declaration testimony regarding the document is speculative, the district court properly disregarded this summary judgment evidence.

Thus, the only evidence submitted by Williams regarding her claim that she suffered from an impairment that substantially limited a major life activity was her own declaration that contained conclusory allegations.  The case law is clear that this isn't sufficient to overcome summary judgment.  Because Williams' claims rested on her own conclusory allegations and unsupported speculation, summary judgment was proper in this case.

> **(ii)    Supporting documentation is required to prove that an impairment substantially limits a major life activity.**

Next, Williams argues that the district court erred in citing cases decided under the pre-amendment version of the ADA for the proposition that medical

documentation and/or expert testimony is required to support a claim that an impairment substantially limits a major life activity.  Williams' argument is misplaced.  The district court did **not** state that expert testimony was always required.  ROA.900-916.   Rather, the district court explained that a self-serving declaration without medical documentation or support is not sufficient for a reasonable jury to find at the time of discharge, Williams' impairments substantially limited a major life activity.  ROA.911.   The cases cited by the district court stand for the proposition that an individual's self-serving testimony without any further documentation is insufficient evidence of a substantially limiting disability as a matter of law.  ROA.911.

In fact, case law supports the district court's analysis that a self-serving declaration containing mere conclusory allegations without any supporting documentation or testimony is insufficient to overcome a motion for summary judgment. *General Elec. Co. v. Jackson*, 595 F. Supp. 2d 8, 36 (D.D.C. 2009) (when a "declaration is self-serving and uncorroborated" it is "of little value at the summary judgment stage."); *Bellofatto v. Red Robin Intern., Inc.*, No. 7:14-cv-00167, 2014 WL 7365788, at *10 (W.D. Vir. Dec. 24, 2014) (the court concluded that plaintiff's presentation of sworn testimony **and** medical documentation was sufficient that a reasonable jury could conclude that the plaintiff had an impairment

that substantially limited one or more major life activities.)  (emphasis added); *Williams v. AT&T Mobility Services, LLC*, 186 F. Supp. 3d 816, 824 (W.D. Tenn. 2016) ("Credible testimony from the individual with a disability **and** his/her family members, friends, or coworkers may suffice.")  (emphasis added).

Ironically, the cases cited by Williams involved credible testimony from the individual employee **in addition to** supporting documentation.  For example, in *Williams v. AT&T Mobility*, the employee relied on her own testimony **and** her medical record in support of her claim that her impairment substantially limited a major life activity.  *Williams v. AT&T Mobility Servis., LLC*, 186 F. Supp. 3d 816, 824-5 (W.D. Tenn. 2016) (emphasis added).  "Some diagnosis must explain the duration or severity of the impairment and self-described symptoms…without corroborating medical evidence or any diagnosis are insufficient to establish a substantial limitation on a major life activity."  *Id*.  Further, in *Pallatto v. Westmorland County Children's Bureau*, the plaintiff supported her claim that she suffered from a disability by including her own deposition testimony and her FMLA application.[4]  *Pallatto v. Westmorland County Children's Bureau*, No 2:11cv1206, 2014 WL 836123, at *11 (W.D. Penn. March 4, 2014).

---

[4] In our case, Williams did not submit the FMLA form in an admissible format.  Moreover, Williams judicially admitted that the form was not evidence of her disability.  ROA.784 and 910.

In contrast, Williams did not submit her supporting documentation (the FMLA certification form and the disability claim form) in an admissible format from which the court could consider them as evidence of her disability. *Arlington Apt. Investors, LLC v. Allied World Assur. Co. (U.S.), Inc.*, 612 Fed. Appx. 237, 238 (5th Cir. 2015) ("A court may consider **only** admissible evidence in ruling on a motion for summary judgment.") (emphasis added); *Murchison v. Cleco Corp.*, 544 Fed. Appx. 556, 561 (5th Cir. 2013) (noting that the plaintiff had a burden to produce "sufficient **admissible** evidence to avoid summary judgment.") (emphasis added). Therefore, the district court properly disregarded Williams' FMLA certification form and her disability claim form as proof of her disability. The only evidence that remained as to whether she had an impairment that substantially limited a major life activity was her own conclusory declaration. Without any supporting documentation substantiating Williams' claims, the declaration testimony was insufficient to overcome summary judgment as a matter of law.

      **(iii)**    **Williams' evidence of "substantially limits" does not raise fact questions sufficient to overcome summary judgment.**

In an extension of the foregoing argument, Williams argues that her own declaration testimony should be sufficient in and of itself to explain how her impairments substantially limited a major life activity. *Appellant's Brief* at p.13-17.

Again, Williams' argument is misplaced. TCCD never articulated that Williams' testimony was irrelevant to describing how her conditions substantially limited a major life activity. Rather, TCCD's argument as well as the district court's conclusion, was that Williams failed to provide admissible supporting documentation in connection with her testimony. ROA.911. As stated above, admissible medical evidence and/or admissible supporting documentation or testimony must be coupled with the plaintiff's own credible testimony in order to show that he or she suffers from an impairment that substantially limits a major life activity. *Bellofatto v. Red Robin Intern., Inc.*, No. 7:14-cv-00167, 2014 WL 7365788, at *10 (W.D. Vir. Dec. 24, 2014) (the court concluded that plaintiff's presentation of sworn testimony and medical documentation was sufficient that a reasonable jury could conclude that the plaintiff had an impairment that substantially limited one or more major life activities.); *Williams v. AT&T Mobility Servis., LLC*, 186 F. Supp. 3d 816, 824-5 (W.D. Tenn. 2016) ("Credible testimony from the individual with a disability and his/her family members, friends, or coworkers may suffice."); *Pallatto v. Westmoreland County Children's Bureau*, No. 2:11cv1206, 2014 WL 836123, at *11 (W.D. Penn. March 4, 2014) (plaintiff supported her claim

that she suffered from a disability by including her own deposition testimony and her FMLA application.)[5].

In support of her argument, Williams cites the *Palacios* case for the proposition that a plaintiff's testimony was sufficient for concluding that depression was substantially limiting and thus a disability. *Palacios v. Continental Airlines, Inc.*, No.H-11-3085, 2013 WL 499866 (S.D. Tex. Feb. 11, 2013). However, the *Palacios* case is distinguishable from the present case because the plaintiff in *Palacios* supported her testimony **with corroborating medical evidence**. *Id.* at *4. (emphasis added). While Williams does acknowledge that the court noted that the plaintiff's testimony was supported by some medical evidence, Williams claims that because the court did not mention what the evidence was, it must not have been that important. *Appellant's Brief* at p.16. Williams' argument falls short. She misses the point that the plaintiff's testimony in *Palacios* was supported by medical evidence, thus creating a fact issue to overcome summaryjudgment. *Id.* at *4.

Williams also cites to *Naber v. Dover Healthcare* for the proposition that a plaintiff's own testimony concerning her depression and how it affected her without expert testimony was sufficient to prove a disability. *Naber v. Dover Healthcare Assocs.*, 765 F. Supp. 2d 622, 643-44 (D. Del. 2011). However, the *Naber* case is

---

[5] *See* Footnote no. 4.

distinguishable because in the present case, Plaintiff testified in her deposition that her alleged impairment **only impacted her ability to date and socialize**. ROA.184-185. It was not until Williams responded to TCCD's motion for summary judgment that Williams submitted a self-serving declaration that her impairments impacted a major life activity. ROA.235-254. "A party cannot 'manufacture' a dispute by offering its own contradictory testimony." *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015); *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) ("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement….").

Finally, Williams cites to *Estate of Murray v. UHS of Fairmount, Inc.*, to support her claim that a plaintiff's testimony is sufficient to raise a fact question on a disability. *Estate of Murray v. UHS of Fairmount, Inc.*, No. 10-2561, 2011 WL 5449364 (E.D. Penn. Nov. 10, 2011). However, the court in the *Estate of Murray* case stated, "being diagnosed with depression, by itself, does not make an employee 'disabled' under the ADA: the plaintiff must show **with medical evidence** that the depression substantially limits a major life activity." *Id*. at *6. (emphasis added). Here, Williams testified in her deposition that her impairments only impacted her ability to date and/or socialize. ROA.184-185. It was not until TCCD filed its

motion for summary judgment that Williams tried to create a fact issue to survive summary judgment that she submitted unsupported sworn declaration testimony to the contrary.  ROA.235-254.   Williams has not submitted admissible evidence to show that she has an impairment that substantially impacts a major life activity.

>           **(iv).   Even with reasonable inferences drawn in favor of Williams, her claim cannot survive summary judgment.**

Williams argues that the Certification of Fitness for duty form (ROA.301-302) wherein Williams' treating physician marked she could return to work with <u>no restrictions</u> but also stated "please make reasonable accommodations" should be construed to mean that Williams had an impairment that was substantially limited a major life activity.  *Appellant's Brief* at p.  17.   Even drawing all reasonable inferences from this document in favor of Williams, it does not show that she has an impairment that substantially limits a major life activity.  In fact, the form suggests the opposite.  By indicating that Williams could return to work a full, regularly scheduled day with no restrictions, the Certification form actually suggests that Williams does not have an impairment that substantially impacts a major life activity.

>           **(b) Summary judgment was properly granted on Williams' "regarded as" disability claim.**

In addition to claiming she had an impairment that substantially limited a major life activity, Williams also claimed that TCCD "regarded her" as disabled. ROA.12-13.  Summary judgment was properly granted on Williams' "regarded as" claim because (i) TCCD properly moved for summary judgment on this claim; and (ii) Williams failed to present evidence that TCCD regarded her as disabled.

### (i)     TCCD properly moved for summary judgment on Williams' "regarded as" claim.

Williams argues that the district court erred in granting summary judgment on her "regarded as" claim because it was not raised in TCCD's Motion for Summary Judgment.  However, TCCD did properly move for summary judgment on this claim.  First, TCCD moved for summary judgment on all of Williams' claims by asking the district court to dismiss Williams' lawsuit **in its entirety**.  ROA.105 and 131.  Moreover, in TCCD's Motion for Summary Judgment, TCCD articulated that summary judgment was proper because Williams could not provide evidence of one or more essential elements to support her disability discrimination claim under the ADA and Texas Labor Code.  ROA.105.   TCCD also addressed Williams' claim that TCCD had not properly moved for summary judgment on her "regarded as" claim in its reply.  ROA.520-533.   Despite being on notice that TCCD was clearly moving for summary judgment on all of Williams' claims, Williams never attempted to file a sur-reply addressing TCCD's arguments.  ROA.912 and 915.   Further,

Williams failed to present any evidence for the court to consider that TCCD regarded her as disabled.  ROA.912.

On appeal, Williams claims that the district court should not have granted summary judgment until Williams was given notice and an opportunity to respond under Rule 56(f).  However, the Fifth Circuit has held that when a party moves for summary judgment affirmatively requesting dismissal of the complaint as a whole, then the nonmoving party has had ample notice and an opportunity to object to the scope of relief prayed for.  *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 798-99 (5th Cir. 2010).  In the present case, TCCD affirmatively sought dismissal of Williams' entire complaint in its motion for summary judgment.  ROA.105 and 131.  Therefore, as of July 22, 2016, Williams was on notice that TCCD was moving for summary judgment on all of Williams' claims.  ROA.105 and .131.  Further, TCCD addressed Williams' "regarded as" claim in its reply in response to the arguments Williams raised in her response to TCCD's motion for summary judgment.  ROA.520-533.  Even after TCCD filed its reply on September 9, 2016, Williams never moved for leave or otherwise attempted to file a sur-reply addressing TCCD's arguments asserted in its reply.  ROA.912 and 915.  Williams had ample time to file a motion for leave to file a sur-reply but choose not to do so.[6]  Because Williams had

---

[6] TCCD's reply was filed on September 9, 2016.  Summary judgment was not granted by the district court until November 22, 2016.  ROA.5 and 7.

notice as of July 22, 2016 that TCCD was moving for summary judgment on all of her claims but decided not to present evidence sufficient to overcome summary judgment, the district court properly granted summary judgment on this claim.

### (ii)    Williams did not present evidence that TCCD "regarded her" as being disabled.

On appeal, Williams argues that the district court erred in granting summary judgment on her "regarded as" claim because a "plaintiff is no longer required to prove an employer perceived an impairment to be substantially limiting." *Appellant Brief* at p. 26.   While it is true that an "individual meets the requirement of 'being regarded as having an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," summary judgment was still proper because Williams did not present any evidence that TCCD perceived her as having an impairment and/or terminated her employment because of her alleged impairment. *See* 42 U.S.C. § 12102(3)(A).

First, Williams failed to present any evidence that TCCD perceived her as having an impairment.  To prevail on a regarded as claim, a plaintiff can prevail by establishing "she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the

impairment limits or is perceived to limit a major life activity." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015).   As noted by the district court, Williams' evidence that TCCD regarded her as disabled consisted of the following: statements in her declaration that she told her immediate supervisors about her PTSD, depression, anxiety, and ADHD; that she told her supervisors by e-mail that she had been diagnosed with a biological imbalance; and her FMLA leave and short term disability claim forms.  ROA.913.  With that said, this evidence does not show that TCCD perceived Williams as having an impairment.   Rather, this simply shows that Williams allegedly informed TCCD of her alleged medical condition.  However, "mere knowledge of an employee's medical condition does not in itself 'support an inference that [the employer] regarded [her] as disabled.'" *Ariza v. Loomis Armored US, L.L.C.*, No.  16-30131, 2017 WL 218011, at *3 (5th Cir. Jan. 18, 2017).  Further, Williams did not submit any evidence demonstrating that TCCD terminated her because of a perceived impairment.

In support of her argument, Williams cites to the *Cannon v. Jacobs Field* case for the proposition that an email and an internal report are sufficient evidence to show an employer regarded an employee as disabled.  *Appellant's Brief* at p.  27. The *Cannon* case is distinguishable from the present case for several reasons.  In the *Cannon* case, the employee applied for a job as a field engineer and, as part of the

application process, underwent a pre-employment physical. *Cannon v. Jacobs Field Services North America, Inc.*, 813 F.3d 586, 588 (5th Cir. 2016). The employee told the physician about a prior rotator cuff injury. *Id.* The physician cleared the employee for the position so long as the employer "offered the following accommodations for the rotator cuff injury: no driving company vehicles; no lifting, pushing, or pulling more than ten pounds; and no working with his hands above shoulder level." *Id.* Upon being informed of the need for these accommodations, the employer rescinded the job offer and said that the employee would not be able to meet the project needs and required job duties since the job required an employee to be capable of driving, climbing, lifting, and walking. *Id.* at 589. Moreover, the employer's human resources representative contacted the employee to tell him that the employer had concerns that he could not reach above his head with his right arm. *Id.* In reviewing whether this evidence showed that the employer regarded the employee as disabled, the court noted that the communications from the employer and the doctor's report about his limitations supported a finding that the employer perceived the employee as having an impairment. *Id.* at 592.

In the present case, Williams' only evidence consists of her conclusory allegations in her declaration that she allegedly told her supervisors at TCCD about her PTSD, depression, anxiety and ADHD. Williams did not present any evidence

showing communications from TCCD referencing or acknowledging her alleged impairments.  Unlike the *Cannon* case where the employer expressly rescinded the job offer due to the employee's impairments as listed by his treating physician (i.e. inability to lift), no such evidence exists in this case.  In fact, the Certification for Fitness for Duty form (ROA.301-302) submitted by Williams to TCCD shows that she can return to work **without any restrictions**, thus giving the impression that she has no impairments.  Further, Williams did not submit any evidence that the decision makers at TCCD knew of any alleged impairment and terminated her employment because of an alleged impairment.  Finally, Williams did not present any evidence tying complaints about her to her asserted medical needs.  *See Burton*, 798 F.3d at 231.  As such, summary judgment was properly granted on Williams' "regarded as" claim.

### 2.  Williams is not qualified for the position and/or did not provide admissible evidence to overcome summary judgment.

Because Williams did not present admissible evidence to satisfy the disability prong of her *prima facie* case for her discriminatory termination claim, the district court did not have to analyze whether Williams presented evidence that she was qualified to perform the essential functions of her position.  TCCD maintains that Williams still cannot prove the disability element of her *prima facie* case and, therefore, summary judgment was and is proper in this case.  With that said, if the

Court were inclined to believe that Williams has presented sufficient evidence to satisfy the disability element of her *prima facie* case, TCCD argues that summary judgment was still proper because Williams cannot perform the essential functions of her job and/or did not present sufficient evidence to overcome summary judgment.

An individual is considered to be a "qualified individual" if he or she, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8). "Consideration shall be given to the employer's judgment as to what functions of the job are essential." *Id.* Williams was employed by TCCD as an Instructional Associate in the Writing Lab. ROA.113. The essential functions of the Instructional Associate position include: providing feedback for students on writing assignments on a walk-in and scheduled basis, conducting tutoring sessions with students, supervising students working on open-access computers in the writing lab, working effectively with other writing lab staff, students, and faculty members, and being able to thrive in a fast-paced, flexible work environment. ROA.135-138. This position also requires excellent customer service and oral communication skills. ROA.135-138.

During Williams' tenure, TCCD received numerous complaints that Williams was unable to multi-task by assisting students on both a walk-in and scheduled basis and became extremely frustrated and agitated when she was required to do so. ROA.137-138; 144; and 150. Williams had on-going conflicts with faculty members and her co-workers in the lab and she was insubordinate to her supervisor, Conrad Herrera. ROA.137-138. TCCD also received numerous complaints from students, staff and other faculty regarding Williams' behavior. ROA.137-150. Because TCCD received these complaints against Williams about her inability to exhibit good customer service and communication skills, TCCD legitimately terminated Williams due to her inability to perform the essential functions of the Instructional Associate position.

### 3. There is no evidence that TCCD terminated Williams due to her alleged disability.

Just like above, the district court was not required to analyze whether Williams suffered an adverse employment action because of her disability since Williams failed to satisfy the disability prong of her *prima facie* case. TCCD still maintains that summary judgment was proper because Williams did not present sufficient evidence to overcome summary judgment on the disability prong of her *prima facie* case and, therefore, the Court does not even need to analyze this element. However, if the Court were to assume that Williams did satisfy the disability and

qualification prongs of her *prima facie* case, summary judgment was still proper because there was no evidence that TCCD terminated Williams because of her alleged disability.

In this case, Williams did not present any evidence that the TCCD employees who decided to terminate her employment where aware of her alleged impairment or, if they were aware of her alleged impairments, even considered those impairments in deciding to terminate her employment. In fact, Williams admits that in her meetings with supervisors and administrators of TCCD, no one ever stated that they would not work with individuals with disabilities or words to that effect. ROA.180-181. Moreover, Williams admits that she is not aware of any TCCD practice or policy wherein TCCD would not accommodate employees with disabilities or where TCCD retaliated against individuals for exercising their rights under the FMLA or ADA. ROA.182.

On appeal, Williams claims that an e-mail exchange between Williams' supervisors allegedly shows that TCCD terminated Williams because of her alleged disability. Specifically, on November 14, 2012 Anita Biber sent an email to Dr. Hubbard stating: "I do hope she [Williams] is the one who decides that the lab setting is not the ideal place for her talents to shine." ROA.338. In reply, Dr. Hubbard stated: "I am happy she is open to exploring what might be the best fit for her."

ROA.338.   These e-mail exchanges in no way indicate that Anita Biber and/or Dr.

Hubbard knew of any alleged impairment or considered any alleged impairment in

their decision making process.   A reasonable jury could not conclude from these

emails that TCCD terminated Williams due to her alleged disability because these

statements do not tie to Williams' alleged medical needs or conditions.   Therefore,

the district court properly granted summary judgment.

### 4. TCCD articulated a legitimate, non-discriminatory reason for terminating Williams' employment.

Even if the Court were to assume that Williams carried her *prima facie* burden

of proof, her discriminatory termination claim should still be dismissed because

Williams did not produce a scintilla of admissible evidence to refute the legitimate

business reason that led TCCD to terminate her employment.   TCCD terminated

Williams' employment because she was not able to perform the essential functions

of her job as an Instructional Associate.   ROA.137-138.

Once a plaintiff makes a *prima facie* showing, the burden shifts to the

defendant to articulate a legitimate, non-discriminatory reason for the employment

action.   *Delaval v.   PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir.

2016).   TCCD articulated a legitimate, non-discriminatory reason for terminating

Williams' employment: Williams was unable to perform the essential functions of

her job as an Instructional Associate as exhibited by her poor performance, which TCCD attempted to address when Williams had her outburst on November 13, 2012:

- Williams was unable to multi-task helping students on an appointment and walk-in basis and often became agitated when required to do so.

- Williams had ongoing conflicts with her co-workers in the lab and was insubordinate with her supervisor, Conrad Herrera.

- Williams had ongoing conflicts with other faculty members who sent their students to the lab.

- Williams did not want to work in the lab alone and pressured other staff members to change their schedules or to come to work outside their work hours to assist her.

- Williams had several loud outbursts in the lab and in the hallway outside the lab related to her interpersonal conflicts with students, faculty and staff.

- Williams received complaints from students, staff and faculty about her behavior.

- Finally, on November 13, 2012, when told about a complaint from another instructor, Williams became angry, agitated and began to

cry uncontrollably.  She made comments that indicated she might

harm herself and requested to take drugs that were in her purse.

ROA.137-138.     For these reasons, TCCD decided to terminate Williams'

employment.  Since TCCD has articulated a legitimate, non-discriminatory reason

for its decision to terminate Williams' employment, Williams' *prima facie* case

disappears (if it ever existed).  To survive summary judgment, Williams had to

introduce facts showing that TCCD's proffered reason is pretext or that another

motivating factor to TCCD's decision was Williams' protected characteristic.

Williams failed to introduce evidence showing either pretext or an unlawful

motivating factor.

### 5.  There is no evidence of pretext.

After the employer articulates a legitimate, non-discriminatory reason for its

action, the employee must offer sufficient evidence to create a genuine issue of

material fact either (1) that defendant's reason is not true, but is instead a pretext for

discrimination; or (2) that defendant's reason, while true, is only one of the reasons

for its conduct, and another motivating factor is the plaintiff's protected

characteristic.  ROA.909; *E.E.O.C.  v.  LHC Group, Inc.*, 773 F.3d 688, 702 (5th Cir.

2014).   Here, Williams has not presented any evidence that TCCD's reasons for its

decision were pretext for discrimination or that another motivating factor to TCCD's decision was Williams' alleged protected characteristic.

### (a) Temporal proximity alone is insufficient to raise a triable issue.

Williams argues that the timing of her request for accommodations in comparison to her termination by itself is sufficient that show TCCD's reasons for her termination were pretext. *Appellant Brief* at p. 20. However, this Circuit has expressly held that temporal proximity between a plaintiff revealing a disability to her employer and her termination, by itself, is not enough to establish pretext. *Fairchild v. All American Check Cashing, Inc.*, 815 F.3d 959, 968 (5th Cir. 2016) (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015)). Therefore, Williams' argument that the timing alone is sufficient to show pretext is incorrect.

### (b) TCCD's reasons do not lack credence.

Next, Williams attempts to rebut TCCD's reasons for her termination by arguing that she was not required to help students on a walk-in basis and that she does not have conflicts with students, staff and/or faculty. In support of her argument, Williams relies on the Declaration of English Professor Dr. Curtis Fukuchi. However, Williams' reliance on Dr. Fukuchi's testimony is misplaced. Dr. Fukuchi only spent approximately two to eight hours per week in the Writing

Lab and, therefore, was not privy to all the interactions of the writing tutors and their supervisors.  ROA.537.   As such, Dr.  Fukuchi states that he cannot testify as to whether the incidents that led to Williams' termination did or did not occur.  ROA.537.

Williams also tries to use two declarations of students at TCCD to show that she did not have interpersonal conflicts with students.  ROA. 364-367.   TCCD objected to these declarations.  ROA.517-518.   Again, this argument fails.  These students were not present in the Writing Lab during every shift that Williams worked.  As such, these two students have no personal knowledge and cannot testify as to whether the incidents that led to Williams' termination did or did not occur.  Therefore, Williams is unable to show that TCCD's reasons for her termination are pretext for discrimination.

(c) **There are no evidentiary inconsistencies concerning Williams' termination.**

Williams argues that summary judgment was improper because it is unclear who made the ultimate decision to terminate her employment and, therefore, this is evidence of pretext.  This argument likewise fails.  First, the decision leading up to the termination of Williams' employment involved several individuals and steps.  Anita Biber recorded her interactions with Williams and submitted those to Dr.  Hubbard.  ROA.143-147.   At that point, Dr.  Hubbard drafted a memorandum to Dr.

Coronado recommending the termination of Williams.  ROA.137-138.  Thereafter, Dr. Coronado had to receive approval from the Chancellor per TCCD policy.  *See* ROA.323.  This is consistent with TCCD's discovery responses.  Williams' Interrogatory No. 6 asked TCCD to identify each person involved in the decision to terminate Williams' employment and, in response, TCCD identified Dr. Coronado, Anita Biber, and Dr. Hubbard.  ROA.375-376.  The Interrogatory did not ask TCCD to identify who gave final approval on these individuals recommendation for termination.  Anita Biber, Dr. Hubbard, and Dr. Coronado were involved with the interactions with Williams that led to the decision to terminate Williams.  Therefore, there is no inconsistency in the manner in which TCCD responded to this discovery request.  Moreover, the simple fact that "it is unclear who made the termination decision" does **not** establish pretext.  *See Gray v. Kroger Corp.*, 804 F. Supp. 2d 623, 630-631 (S.D. Ohio 2011) (emphasis added).  Therefore, Williams' argument that there is an inconsistency about who made the decision to terminate her employment fails, and summary judgment was properly granted.

### (d) TCCD Did Not Exhibit Discriminatory Animus.

Finally, Williams argues that because Anita Biber thought Williams should no longer be employed after November 13, 2012 and because Dr. Hubbard thought she was volatile that this somehow shows that TCCD had discriminatory animus

towards Williams because of her alleged disability.  This is simply not true.  First,

Williams testified that she is not aware of any TCCD practice or policy wherein

TCCD would not accommodate employees with disabilities.  ROA.182.   Williams

also testified that she is not aware of any instance where TCCD retaliated against

individuals for exercising their rights under the FMLA or ADA.   ROA.182.

Moreover, there is no evidence that Anita Biber or Dr. Hubbard considered Williams

to be disabled.  Simply stating that an individual should no longer be employed and

that the individual is volatile does not mean that there is evidence of discriminatory

animus towards disabled individuals.  Therefore, this argument also fails as a matter

of law.

### B. Summary Judgment was proper on Williams' failure to accommodate claim.

The district court properly granted summary judgment on Williams' failure to

accommodate claim because: (1) TCCD raised this argument in its motion for

summary judgment; and (2) Williams failed to present admissible evidence that she

has an actual disability as defined by the ADA.

### 1. TCCD properly moved for summary judgment on Williams' failure to accommodate claim.

In her response to TCCD's motion for summary judgment, Williams argues

that TCCD did not move for summary judgment on her failure to accommodate

claim.  However, TCCD did move for summary judgment on Williams' failure to accommodate claim.  In its motion for summary judgment, TCCD argued that the accommodations requested by Williams were not reasonable or needed under the ADA since Williams admitted that the accommodations she requested had no impact on her ability to perform the essential functions of her job.  ROA126-127.  Moreover, TCCD moved for summary judgment on this claim by asking the district court to dismiss Williams' lawsuit **in its entirety**.  ROA.105 and .131.  Williams was therefore on notice that TCCD was moving for summary judgment on all of Williams' claims, including her failure to accommodate claim.  Despite being on notice, Williams never filed a motion for leave or otherwise attempted to file a sur-reply addressing TCCD's arguments.  ROA.912 and 915.  Therefore, TCCD properly moved for summary judgment on Williams' failure to accommodate claim and summary judgment was properly granted by the district court.

### 2. Williams did not present evidence that she had an actual disability under the ADA.

To succeed on a failure to accommodate claim, a plaintiff must prove that he or she has an actual disability as defined by the ADA.  42 U.S.C.  §§ 12201(h) and 12102(1).  A "regarded as" claim will not support a failure to accommodate claim.  *Id.*  In this case, Williams failed to present sufficient admissible evidence that she had an impairment that substantially limited a major life activity.  ROA.914.

Without sufficient evidence that she suffered from an actual disability as defined by the ADA, Williams cannot prevail on a failure to accommodate claim as a matter of law and, therefore, summary judgment was properly granted.

### C. Summary Judgment was proper on Williams' retaliation claim because TCCD properly moved on this claim and Williams failed to exhaust her administrative remedies.

The district court properly granted summary judgment on Williams' retaliation claim because: (1) TCCD raised this argument in its motion for summary judgment; and (2) Williams did not exhaust her administrative remedies.

#### 1. TCCD properly moved for summary judgment on Williams' retaliation claim.

Williams argues that the district court erred in granting summary judgment on her retaliation claim because it was not raised in TCCD's Motion for Summary Judgment. However, TCCD did properly move for summary judgment on this claim. First, TCCD moved for summary judgment on all of Williams' claims by asking the district court to dismiss Williams' lawsuit **in its entirety**. ROA.105 and 131. Moreover, TCCD argued that Williams could not provide evidence of one or more essential elements of her disability and retaliation claims under the ADA and Texas Labor Code. ROA.112-113, 128, and 130. Again, Williams was on notice that TCCD was clearly moving for summary judgment on all of her claims but never filed a motion for leave to file a sur-reply addressing TCCD's arguments. ROA.912

and 915.  Further, Williams did not present any evidence for the court to consider that she exhausted her administrative remedies as to her retaliation claim, or that TCCD terminated her due to her participation in protected activities.

On appeal, Williams claims that the district court should not have granted summary judgment until Williams was given notice and an opportunity to respond under Rule 56(f).  However, the Fifth Circuit has held that when a party moves for summary judgment affirmatively requesting dismissal of the complaint as a whole, then the nonmoving party has had ample notice and an opportunity to object to the scope of relief prayed for.  *Apache Corp. v.  W&T Offshore, Inc.*, 626 F.3d 789, 798-99 (5th Cir.  2010).  Here, TCCD affirmatively sought dismissal of Williams' entire complaint in its motion for summary judgment.  ROA.105 and 131. As such, Williams was on notice that TCCD was moving for summary judgment on all of her claims as of July 22, 2016.  ROA.105 and 131.  Further, TCCD addressed Williams' retaliation claim in its reply in response to the arguments Williams raised in her response to TCCD's motion for summary judgment.  ROA.520-533.  Even after TCCD filed its reply on September 9, 2016, Williams never moved for leave or otherwise attempted to file a sur-reply addressing TCCD's arguments asserted in its reply.  ROA.912 and 915.  Williams had ample time to file a motion for leave to

file a sur-reply, but choose not to.[7] Because Williams had notice as of July 22, 2016

that TCCD was moving for summary judgment on all of her claims, but she decided

not to present evidence sufficient to overcome summary judgment, the district court

properly granted summary judgment.

### 2. Williams failed to exhaust her administrative remedies on her retaliation claim.

Williams argues that even though she did not mark the box for retaliation in

her charge, she still exhausted her administrative remedies on her retaliation claim.

This argument fails.  Under the TCHRA and ADA, a plaintiff is required to exhaust

their administrative remedies by filing a charge with the TWC or EEOC.  *Miller v.*

*Southwestern Bell Telephone Co.*, 51 Fed.  Appx.  928, at *6-7 (5th Cir.  2002).

"Retaliation is a distinct legal theory of liability that is not encompassed by other

theories of discrimination."  *ATI Enterprises, Inc.  v.  Din*, 413 S.W.3d 247, 252

(Tex.  App.—Dallas 2013, no pet.)  (mem.  op.).

The Fifth Circuit has held that summary judgment was proper when a plaintiff

failed to mark the box for retaliation on his EEOC charge, but did mark the box for

age and disability discrimination.  *Miller*, 51 Fed.  Appx.  at *6-8.  In analyzing

whether the plaintiff failed to exhaust his administrative remedies on his retaliation

---

[7] Again, TCCD's reply was filed on September 9, 2016.  Summary judgment was not granted until November 22, 2016.  ROA.5 and 7**.**

claim, the Court reasoned that "federal anti-discrimination statutes…have consistently required claimants to fill in the appropriate corresponding boxes when filing their claim for unlawful employment action." *Id.* at *6. (citing to *Price v. Harrah's Md. Heights Operating Co.*, 117 F. Supp. 2d 919, 921-22 (E.D. Mo. 2000) (wherein summary judgment was granted on failure to exhaust administrative remedies because the plaintiff did not check the box for retaliation and did not specifically allege retaliation in the text of the charge). Moreover, this Court noted that the same procedural requirements that apply to Title VII claims in EEOC charges also apply to charges filed under the ADA, thereby requiring a plaintiff to exhaust his administrative remedies before filing a claim under the ADA. *Id.* at *7. The Court also explained that another circuit indicated "that in the ADA context, a plaintiff's failure to fill in the appropriate box in the filed charge, coupled with the inability to describe the general nature of the claim in the narrative section of the charge, forms a sufficient basis for summary judgment." *Id.* As a final point supporting its holding, the Court reasoned that since the alleged retaliation occurred prior to the plaintiff filing his charge, "[the plaintiff] was well aware of the conduct and actions that would give rise to his claim of retaliation under the ADA." *Id.* at *8.

The present case is similar to *Miller*. Williams did not mark the box for retaliation on her charge, but only marked the boxes for age and disability discrimination. ROA.536. In the personal harm section of the charge, she did not mention her claim for retaliation or that she engaged in any protected activity. ROA.536. Instead she simply stated, "I was denied reasonable accommodations on 1-02-13 by Ricardo Coronado and Sharion Marshall, in a meeting, after I provided them with a doctor's note regarding this. I was subsequently terminated on 1-07-13 by Ricardo Coronado." ROA.53**6**. This is insufficient to exhaust her administrative remedies on her retaliation claim.

To support her argument, Williams relies on the *Lahey v. Illinois Bell Telephone Co.* case decided by the Northern District of Illinois. This case is distinguishable from the present case. The plaintiff in *Lahey* clearly stated in his charge, "During my tenure, I **requested** a reasonable accommodation, which was not provided. On or about June 26, 2012, I was discharged." *Lahey v. Illinois Bell Telephone Co.*, 13 C 8252, 2014 WL 1884446, at *1 (N.D. Ill. May 9, 2014) (emphasis added). The plaintiff's language clearly indicates that he engaged in a protected activity under the ADA. Here, Williams did not indicate in her charge that she requested an accommodation. ROA.536.

Even if the Court were to conclude that Williams exhausted her administrative remedies on her retaliation claim, summary judgment was still proper because Williams did not present sufficient evidence that TCCD retaliated against her for engaging in protected activity. Williams did not present evidence that her supervisors were aware she engaged in protected activity and that the basis for her termination was her engagement in that protected activity. Therefore, the district court properly granted summary judgment.

## II. Summary Judgment was properly granted on Williams' FMLA claims.

Summary judgment was proper on Williams' FMLA claims because: (A) TCCD properly moved for summary judgment on Williams' failure to restore and retaliation claims under the FMLA since both claims are subject to the two-year limitations period; and (B) Williams failed to present summary judgment evidence supporting a claim for willfulness.

### A. TCCD moved for summary judgment on Williams' failure to restore and retaliation claims under the FMLA.

In her response to TCCD's motion for summary judgment, Williams argued that TCCD failed to move for summary judgment on her failure to restore claim under the FMLA. However, TCCD did properly move for summary judgment on this claim. First, TCCD moved for summary judgment on all of Williams' claims

by asking the district court to dismiss Williams' lawsuit **in its entirety**. ROA.105 and 131. Moreover, TCCD's argument was based on the violation of the statute of limitations—which applies equally to Williams' failure to restore and retaliation claims under the FMLA. ROA.120 and 907. TCCD also addressed Williams' claim that TCCD had not properly moved for summary judgment on her failure to restore claim in its reply. ROA.525-526. Despite being on notice that TCCD was moving for summary judgment on all of Williams' claims, Williams never filed a motion for leave or otherwise attempted to file a sur-reply addressing TCCD's arguments. ROA.907, 912 and 915. Nor did Williams supply any evidence of her failure to restore claim. Therefore, TCCD did move for summary judgment on Williams' FMLA claims and these claims were properly considered by the district court in granting summary judgment.

### B. Williams failed to present summary judgment evidence on a claim of willfulness.

On appeal, Williams argues that because TCCD's motion for summary judgment was based on the two-year limitations period and not the three-year limitations period for a willful claim, the district court should not have granted summary judgment. This argument is unreasonable. TCCD moved for summary judgment arguing that Williams' FMLA claims were barred by the limitations period. ROA.120. In her response, Williams argues that her claims were not barred

by the statute of limitations, because there is a limitations period of three years for willful violations.  ROA.206-207.   However, Williams did not provide or point to any evidence of willfulness to support her argument.  ROA.206-207 and 905-907. In reply to her response, TCCD argued that Williams had not pled a claim for a willful violation of the FMLA and, therefore, the three-year limitations period did not apply.  ROA.525-527.Thus, Williams was clearly aware that TCCD was moving for summary judgment on Williams' FMLA claims based on a limitations argument. Despite being on notice of this fact, Williams never filed a motion for leave or otherwise attempted to file a sur-reply addressing TCCD's arguments.  ROA.912 and 915.  In addition, Williams chose not to submit summary judgment evidence of willfulness.

Williams argues that the district court's citation to the *Apache* case is unavailing because she claims that she did object and argue that summary judgment was inappropriate because of the three year limitations period.  Williams misses the point of the citation.  The district court cited to the *Apache* case for the proposition that Williams had ample notice and opportunity to respond to TCCD's argument that Williams' FMLA claims fail based on a limitations argument and still failed to supply evidence of willfulness.  ROA.907.   The district court specifically noted that TCCD's motion for summary judgment "gave Williams ample notice that she was

required to provide summary judgment evidence supporting her defense that she was alleging a willful violation of the FMLA." ROA.907 fn. 1.

Finally, Williams argues that the sheer fact that Williams returned from a FMLA-qualifying leave when she was terminated is enough to support a willfulness finding. This is not sufficient evidence to overcome summary judgment. Because the FMLA does not define "willful," courts look to case law under the FLSA's willfulness standard. *Mozingo v. Oil States Energy, Inc.*, 661 Fed. Appx. 828, 830 (5th Cir. 2016). "To establish a willful violation of the FMLA, a plaintiff must show that his employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Id.* (internal citations omitted). "A negligent violation is not a willful violation, and an unreasonable violation does not necessarily constitute a willful violation." *Id.* Here, Williams has supplied no evidence indicating that TCCD knew or showed reckless disregard that its conduct violated the FMLA. Because Williams failed to submit any evidence to support a willful violation, her claims are subject to the two-year limitations period. *See Porter v. New York Univ. School of Law*, 392 F.3d 530, 532 (2nd Cir. 2004). Because Williams failed to timely file her claims under the two-year limitations period, her FMLA claims are time barred and summary judgment was proper.

## <u>CONCLUSION AND STATEMENT OF RELIEF BEING SOUGHT</u>

Because TCCD properly moved for summary judgment on Williams' case and Williams failed to present admissible evidence to overcome summary judgment, the district court properly granted summary judgment.  TCCD respectfully requests that the Court affirm the district court's grant of summary judgment.

Respectfully submitted,

<u>/s/ Lu Pham</u>
Lu Pham
State Bar No.  15895430
LPham@dphllp.com
Lauren H.  McDonald
State Bar No.  24085357
LMcDonald@dphllp.com
Dowell Pham Harrison, LLP
505 Pecan Street, Suite 101
Fort Worth, Texas 76102
Phone: (817) 632-6300

Angela H.  Robinson
State Bar No.  24006655
Angela.Robinson@tccd.edu

Attorneys for Appellee,
Tarrant County College District

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Brief has been filed with

the Clerk for the U.S. Court of Appeals for the Fifth Circuit and served on counsel

for Appellant on this 17th day of May, 2017, by electronic means as follows:

> Don Uloth
> Donald E. Uloth, P.C.
> 18208 Preston Road, Suite D-9 #261
> Dallas, Texas 75252
> Don.ultoh@uloth.pro


> Lyle W. Cayce, Clerk
> Fifth Circuit Court of Appeals
> 600 S. Maestri Place
> New Orleans, LA 70130-3408


<u>/s/ Lu Pham</u>
Lu Pham

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

1. This document complies with Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f):

   [x]   This document contains 11,440 words; or

   [ ]   This brief uses a monospaced typeface and contains __ lines of text.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule Appellate Procedure 32(a)(6) because:

   [x]   This document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point font size (12 point for footnotes), Times New Roman type style.

   [ ]   This brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

<u>/s/ Lu Pham</u>
Lu Pham
Dated: May 17, 2017